**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| KINETIC CONCEPTS, INC., and KCI USA, INC., §<br>§<br>§<br>*Plaintiffs,* §<br>§<br>§<br>v. §<br>§<br>WAKE FOREST UNIVERSITY HEALTH SCIENCES, §<br>§<br>§<br>*Defendant.* §<br>_____ §<br>§<br>WAKE FOREST UNIVERSITY and WAKE FOREST UNIVERSITY HEALTH SCIENCES, §<br>§<br>§<br>*Plaintiffs,* §<br>§<br>v. §<br>§<br>KINETIC CONCEPTS, INC., KCI USA, INC., KCI LICENSING, INC., KCI MEDICAL RESOURCES, MEDICAL HOLDINGS LIMITED, and KCI MANUFACTURING, §<br>§<br>§<br>*Defendants.* § | **Consolidated Civil Action Nos.**<br>SA-11-CV-163-XR and SA-11-CV-713-XR |

**ORDER**

On this day the Court considered Kinetic Concepts, Inc., KCI USA, Inc., KCI Licensing, Inc., KCI Medical Resources, Medical Holdings Limited, and KCI Manufacturing's Motion to Dismiss (Doc. No. 53). For the following reasons, the Court finds that the motion should be granted.

1

## I. Background

### A. Factual Background[1]

In October of 1993, Kinetic Concepts, Inc. and Wake Forest University ("WFU") entered into an agreement (the "License Agreement") that granted Kinetic Concepts, Inc. and its affiliates the exclusive rights to certain Patents[2] that were owned by WFU. WFU subsequently assigned all of its rights under the License Agreement and the underlying patents to Wake Forest University Health Sciences ("WFUHS"). Kinetic Concepts, Inc. has incorporated the Patents into its Vacuum Assisted Closure Therapy System ("V.A.C. System") and other wound care products (collectively the "Licensed Products").

On March 18, 2011, WFUHS terminated the License Agreement by sending Kinetic Concepts, Inc. a notice of termination. WFUHS contends that it was entitled to terminate the License Agreement because Kinetic Concepts, Inc. failed to make a required semi-annual floor royalty payment and because Kinetic Concepts, Inc. disputed the validity of the Patents by filing the instant lawsuit. WFUHS further contends that Kinetic Concepts, Inc. has failed to comply with several post-termination obligations imposed on it by the License Agreement.

### B. Procedural Background

Kinetic Concepts, Inc. and KCI USA, Inc. commenced this lawsuit by filing their Original Complaint in this Court on February 28, 2011. The Original Complaint names WFUHS as the sole defendant and seeks: (1) a declaratory judgment that Kinetic Concepts,

---

[1] The following factual background summary is predicated on factual allegations contained in the Answer (Doc. No. 48), which is the pleading that asserts the counterclaims at issue, and documents incorporated into the Answer by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that courts ordinarily examine documents incorporated into a complaint by reference when ruling on Rule 12(b)(6) motions to dismiss).

[2] The patents at issue in this case are United States Patents 5,636,643 ("the '643 patent"), 5,645,081 ("the '081 patent"), 7,198,046 ("the '046 patent"), and 7,216,651 ("the '651 patent") (collectively the "Patents").

Inc. and KCI USA, Inc. owe no royalties under the License Agreement for sales of the V.A.C. System based on the Patents; (2) a declaratory judgment that the claims that cover the V.A.C. System are invalid; and (3) a declaratory judgment that the V.A.C. System does not infringe any valid or enforceable claim of the Patents.

WFUHS filed an Answer to the Original Complaint on January 9, 2013.[3]   In the Answer: WFU was joined as a counterclaim plaintiff; KCI Licensing, Inc., KCI Medical Resources, Medical Holdings Limited, and KCI Manufacturing (collectively the "KCI Affiliates") were joined as counterclaim defendants; and WFU and WFUHS asserted the following six causes of action against all six KCI entities:[4] (1) breach of contract; (2) "breach of contract and audit and accounting"; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment/restitution; (5) unfair and deceptive trade practices and unfair competition in violation of North Carolina General Statutes § 75-1.1 and the common law; and (6) patent infringement.

The KCI entities subsequently filed a Motion to Dismiss and a Brief in Support of the Motion to Dismiss. In their motion to dismiss, the KCI entities seek to: (1) dismiss WFU from the action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing; (2) dismiss all claims against the KCI Affiliates pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted; and (3) dismiss WFU's and WFUHS's second, third, fourth and fifth causes of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

---

[3] This case had been stayed pending resolution of an appeal in *Kinetic Concepts, Inc. v. Bluesky Medical Corp.*, No. SA-08-CV-102 ("*Bluesky II*").

[4]   In this opinion, all six counterclaim defendants—namely, Kinetic Concepts, Inc., KCI USA, Inc., KCI Licensing, Inc., KCI Medical Resources, Medical Holdings Limited, and KCI Manufacturing—will collectively be referred to as the "KCI entities."

WFU and WFUHS filed a response in opposition to the Motion to Dismiss and the KCI entities filed a reply.

## II. Legal Standards

### A. Motion to Dismiss for Lack of Standing Pursuant to Rule 12(b)(1)

A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). "To meet the constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001).

### B. Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III. Discussion

**A. Whether WFU Has Standing to Assert Its Counterclaims**

In their motion to dismiss, the KCI entities argue that WFU is not a proper party to this action because WFU lacks standing to assert any claim of its subsidiary, WFUHS. Specifically, the KCI entities argue that WFU fails to allege that it is a party to the License Agreement or that it owns any rights in the Patents and that, to the contrary, WFU assigned all of its rights under the License Agreement and in the underlying Patents to WFUHS in 2002. The KCI entities further point out that WFU has not joined as co-plaintiff with WFUHS in several other lawsuits asserting the Patents against third parties. Finally, the KCI entities argue that any potential breach of contract claim that WFU may have had before it assigned its rights to WFUHS in 2002 is barred by the statute of limitations.

In response, WFU argues that it has standing with respect to its unjust enrichment claim (fourth cause of action) and unfair and deceptive trade practices claim (fifth cause of action). WFU argues that it has standing to assert these claims because they arise out of the KCI entities' continued use of WFU's confidential and proprietary information after the License Agreement was terminated.

Because WFU implicitly concedes that it does not have standing to assert its causes of action for breach of contract, audit and accounting, breach of the covenant of good faith and fair dealing, and patent infringement, WFU's first, second, third, and sixth causes of action are

dismissed without leave to amend. The Court will address whether WFU may assert its fourth and fifth causes of action *infra*.

## B. Whether WFU and WFUHS Have Stated Any Viable Counterclaims Against the KCI Affiliates[5]

### 1. The Parties' Arguments

In their motion to dismiss, the KCI entities argue that WFU and WFUHS have failed to state any claims against the KCI Affiliates. Specifically, the KCI entities argue that WFU and WFUHS have failed to allege that the KCI Affiliates are parties to the License Agreement, that they exercised any rights or incurred any obligations under the License Agreement, or that they had any involvement in the allegedly wrongful conduct that forms the basis of WFU's and WFUHS's fourth and fifth causes of action. The KCI entities contend that the Answer's use of the collective identifier "KCI" to associate every KCI entity with every allegation is insufficient to give the KCI entities, including the KCI Affiliates, notice of the claims being asserted against them.[6]

In response, WFU and WFUHS argue that each of the KCI Affiliates is a proper party to this litigation and that the Answer provides fair and sufficient notice of the claims against each. The response provides separate arguments in support of 1) the sufficiency of the contract and state law claims and 2) the sufficiency of the patent infringement claims.

With regard to the contract and state law claims, WFU and WFUHS argue that all of their allegations apply equally to all of the KCI entities and that identifying each KCI entity

---

[5] As defined above, in this opinion the term "KCI Affiliates" refers collectively to KCI Licensing, Inc., KCI Medical Resources, Medical Holdings Limited, and KCI Manufacturing.

[6] Although the motion to dismiss challenges the sufficiency of the pleadings as to all KCI entities, the KCI entities do not dispute that Kinetic Concepts, Inc. and KCI USA, Inc. are "proper parties" to this lawsuit and do not move to dismiss all claims against Kinetic Concepts, Inc. and KCI USA, Inc. on the ground that WFU and WFUHS have failed to plead sufficient facts against them.

separately would be "cumbersome, inefficient, and unnecessary." (Resp. at 7.) WFU and WFUHS also point to the fact that they have specifically alleged that Kinetic Concepts, Inc.'s breach of the License Agreement occurred "by and through" the KCI Affiliates. Furthermore, WFU and WFUHS argue that the "KCI group's history in bringing actions on behalf of all affiliates involving the [Patents] and the License Agreement provide sufficient notice to the [KCI Affiliates] of the basis for their . . . liability." (Resp. at 7.) WFU and WFUHS argue that the KCI Affiliates have availed themselves of this Court's jurisdiction in the past by claiming on their own behalves the rights and privileges of the License Agreement, that the KCI Affiliates opposed two motions to dismiss them for lack of standing in *Bluesky II* by arguing that their rights under the License Agreement included rights to make, use, sell, offer, market, lease, import, distribute, sublicense, and receive or pay royalties, and that WFU and WFUHS's allegations "in view of the public record allow[] the reasonable inference that each affiliate actually exercised the rights it was granted and is therefore liable under the License Agreement for its conduct contributing to the breach or violation." (Resp. at 8.) Finally, WFU and WFUHS argue that they "should be allowed to determine—instead of taking KCI's word for it—how the various KCI entities divvied up rights and responsibilities for the conduct comprising the [alleged] breaches and violations." (Resp. at 8.)

With regard to their patent infringement claims, WFU and WFUHS argue that they have pled direct and indirect infringement by each of the KCI Affiliates because WFU and WFUHS's allegations satisfy the pleading requirements of *Twombly* and Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure and because the use of a collective identifier in pleadings involving patent claims is proper and conventional.

In reply, the KCI entities reassert their argument that the KCI Affiliates have no notice of the claims being asserted against them. The KCI entities contend that WFU and WFUHS's pleadings are inconsistent. To demonstrate the inconsistency within the Answer, the KCI entities point out that the Answer alleges that "Wake Forest University and Kinetic Concepts, Inc. entered into an agreement" but also refers to the "License Agreement entered into by Wake Forest and KCI." (Reply at 3) (quoting Answer, Counterclaims at ¶¶ 15, 58). The KCI entities further argue that WFU and WFUHS's contention that the term "KCI" applies to each and every KCI entity cannot be true because Kinetic Concepts, Inc. is the only KCI entity that is a party to the License Agreement and is therefore the only KCI entity that can be liable for any alleged breach. The KCI entities also contend that WFU and WFUHS's arguments regarding the KCI Affiliates' histories of bringing actions involving the Patents are irrelevant because the KCI Affiliates had standing to sue in the other cases pursuant to separate sublicensing agreements with Kinetic Concepts, Inc. that are not at issue in this litigation. The KCI entities contend that WFU and WFUHS cannot sue any of the KCI Affiliates in contract in this case because the KCI Affiliates are not signatories on the Licensing Agreement and are not in privity with WFU and WFUHS.

## 2. Analysis

### *a. WFUHS's First, Second, and Third Causes of Action Against the KCI Affiliates*[7]

WFUHS's first three causes of action all depend on the viability of a cause of action for breach of contract.[8] The parties do not dispute that North Carolina law governs the contract at issue in this case. Under North Carolina law, the "elements of a claim for breach of contract

---

[7] Because WFU has conceded that it does not have standing to assert these causes of action, the Court will only address whether WFUHS has stated these claims against the KCI Affiliates.

[8] As will be described *infra*, the second and third causes of action are not actually independent causes of action. Rather, they are asserted in connection with the breach of contract claim.

8

are (1) existence of a valid contract and (2) breach of the terms of that contract." *Griffith v. Glen Wood Co., Inc.*, 646 S.E.2d 550, 554 (N.C. Ct. App. 2007).

WFUHS does not allege that any KCI entity other than Kinetic Concepts, Inc. was a party to the License Agreement. To the contrary, in the Answer, WFUHS alleges that WFU and "Kinetic Concepts, Inc." entered into the License Agreement. (Answer, Counterclaims ¶ 15.) The plain language of the License Agreement also shows that Kinetic Concepts, Inc. was the only KCI entity that was a party to the Agreement.[9] In response, WFUHS argues that it has "alleged that Kinetic Concepts, Inc.'s breach or violation occurred 'by and through' the KCI affiliates." (Resp. at 7.) This statement corroborates the conclusion that only Kinetic Concepts, Inc. was a party to the License Agreement because the statement implies that only Kinetic Concepts, Inc. could be liable for breach of the Agreement. Thus, while the KCI Affiliates' conduct may be relevant for adjudicating whether Kinetic Concepts, Inc. breached the License Agreement, a cause of action for breach of the License Agreement cannot be maintained against the KCI Affiliates themselves because no allegations establish that the KCI Affiliates were parties to the License Agreement.

Accordingly, because WFUHS has failed to allege sufficient facts to show the existence of a valid contract between WFUHS and the KCI Affiliates, WFUHS's contract-based causes of action fail to state a plausible claim to relief against the KCI Affiliates. As a result, WFUHS's first cause of action, second cause of action, and third cause of action against

---

[9] The License Agreement was executed on behalf of "Kinetic Concepts, Inc." by CEO and President James R. Leininger, M.D. No other KCI entities executed the License Agreement. The Court notes that the body of the License Agreement consistently uses the collective identifier "KCI," which the License Agreement defines as "Kinetic Concepts, Inc. (KCI), and any Affiliate of Kinetic Concepts, Inc." However, there are insufficient factual allegations in the record for the Court to find that the License Agreement's use of the collective term "KCI" establishes that all KCI Affiliates in this case were parties to the License Agreement, especially in light of the fact that the only KCI entity that signed the License Agreement was Kinetic Concepts, Inc.

KCI Licensing, Inc., KCI Medical Resources, Medical Holdings Limited, and KCI Manufacturing are dismissed without leave to amend.[10]

> **b. WFU's and WFUHS's Fourth and Fifth Causes of Action Against the KCI Affiliates**

Whether WFU and WFUHS have stated a claim against the KCI Affiliates for unjust enrichment and unfair and deceptive trade practices will be discussed *infra*, when the Court addresses those causes of action.

> **c. WFUHS's Sixth Cause of Action Against the KCI Affiliates[11]**

In its Answer, WFUHS alleges both direct and indirect infringement against "KCI," a term that is defined throughout the Counterclaims section of the Answer as including all of the KCI entities. In their motion to dismiss, the KCI entities argue that WFUHS has failed to state a claim for patent infringement against them because WFUHS has not sufficiently alleged that any of the KCI Affiliates "performed, or are performing, any actions that could constitute direct or indirect infringement." (Brief in Supp. of Mot. to Dismiss at 13.)

Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure sets forth a sample complaint for direct patent infringement. Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

---

[10] In their motion to dismiss, the KCI entities do not dispute that KCI USA, Inc. is a proper party to the breach of contract cause of action, nor do the KCI entities specifically move to dismiss WFUHS's breach of contract claim against KCI USA, Inc. Accordingly, the Court cannot dismiss WFUHS's breach of contract claim against KCI USA, Inc. at this time. However, the Court notes that there are insufficient allegations establishing that KCI USA, Inc. was a party to the License Agreement and hereby gives notice to WFUHS of the pleading deficiency.

[11] Because WFU concedes that it does not have standing to assert the cause of action for patent infringement, the Court will only address whether WFUHS has stated a claim for patent infringement against the KCI Affiliates.

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). The Federal Circuit has made clear that "Form 18 would control in the event of a conflict between the form and *Twombly* and *Iqbal*." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, --- F.3d ---, 2013 WL 1668960, at *5 (Fed. Cir. Apr. 18, 2013). Nonetheless, "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." *Id.* at *6.

For guidance regarding the pleading requirements for indirect infringement, a court must look to *Twombly* and *Iqbal* because Form 18 does not address indirect infringement. *See Bill of Lading*, 681 F.3d at 1337. Liability for indirect infringement can arise from either 35 U.S.C. § 271(b)[12] or (c).[13] Liability for induced infringement under § 271(b) "requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (internal quotation marks omitted). Contributory infringement under § 271(c) "occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *In re Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)).

---

[12] 35 U.S.C. § 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."
[13] 35 U.S.C. § 271(c) provides: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

Here, the Court finds that WFUHS has failed to satisfy Rule 8's notice requirement because WFUHS's patent infringement claims against the KCI Affiliates are not made with sufficiently individualized allegations. WFUHS has not clearly alleged a claim for direct or indirect infringement against any individual KCI Affiliate, nor has WFUHS alleged how, if at all, any individual KCI Affiliate may be directly or indirectly infringing the Patents. Thus, the KCI Affiliates have not been given fair notice of the allegations and claims asserted against them. *See Twombly*, 550 U.S. at 555 (holding that Rule 8 requires a complaint to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests"). Accordingly, the Court cannot find that WFUHS has stated a plausible claim to relief against any specific KCI Affiliate.

In its response, WFUHS argues that its use of the collective term "KCI" is not improper, that such practice is conventional, that the allegations are "equally sufficient" for all KCI entities, and that "there is no principled way to distinguish them." (Resp. at 7, 10.) These arguments are unpersuasive. While collective identifiers may be appropriate in some instances, WFUHS has not adequately utilized the collective term "KCI" in this case because, at several points throughout the Answer, WFUHS uses the term "KCI" in ways that are inconsistent or plainly incorrect. For example, at one point in the Answer WFUHS refers to the License Agreement as being entered into by "KCI" while at another point in the Answer WFUHS states that the License Agreement was entered into by "Kinetic Concepts, Inc." (Answer, Counterclaims ¶¶ 15, 58); WFUHS asserts that "KCI" filed its Original Complaint in this Court on February 28, 2011, although in fact only Kinetic Concepts, Inc. and KCI USA, Inc. filed the Original Complaint in this Court (Answer, Counterclaims ¶ 38); and WFUHS asserts

12

that the notice of termination sets forth the numerous post-termination obligations imposed on "KCI" by the License Agreement, although the notice of termination in fact only refers to Kinetic Concepts, Inc. (Answer, Counterclaims ¶ 53; Answer, Ex. F). As a result of WFUHS's indiscriminate use of the collective term "KCI," it is impossible for the KCI Affiliates, and the Court, to discern which allegations and claims are referring to which specific KCI entity.[14]

Accordingly, the Court finds that WFUHS has failed to state a claim for patent infringement against any of the individual KCI Affiliates. However, the Court will permit WFUHS to amend its patent infringement claims in order to address the deficiencies discussed herein.

## C. Second Cause of Action: "Breach of Contract and Audit and Accounting"[15]

### 1. Allegations

In support of the cause of action for "Breach of Contract and Audit and Accounting," the Answer alleges the following:

66. Counterclaim Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

67. The License Agreement provides for the right to an inspection of the books and records of KCI related to the License Agreement.

68. KCI has exclusive custody and control of the books and records related to the proper reporting and calculation of royalty payments under the License Agreement.

69. In the License Agreement, KCI assumed responsibility for the proper reporting and calculation of royalty payments under the License Agreement.

[14] The Court recognizes that WFUHS may in fact intend to assert that each and every KCI Affiliate is infringing the Patents in the same way. However, given the inconsistent use of the term "KCI" throughout the Answer, it is not clear that WFUHS is in fact so asserting.
[15] Because WFU concedes that it does not have standing to assert this cause of action, the Court will only address the cause of action as if it is being asserted by WFUHS.

70. By assuming responsibility under the License Agreement, KCI assumed the duty to act in good faith in reporting and calculating royalty payments under the License Agreement.

71. Consistent with these duties and by virtue of the fact that KCI has exclusive custody and control of the relevant books and records, [WFUHS] requests an order requiring KCI to account to [WFUHS] for the proper reporting and calculation of royalty payments under the License Agreement.

## 2. Arguments

In their motion to dismiss, the KCI entities argue that an accounting is an equitable remedy that requires the absence of an adequate remedy at law. The KCI entities therefore argue that the claim for an audit and accounting fails as a matter of law because WFU and WFUHS do not and cannot allege that they lack an adequate remedy at law. The KCI entities further argue that the claim for an audit and accounting is not a properly-pled independent cause of action because WFUHS can obtain the information it seeks through discovery in connection with the breach of contract claim.

In response, WFUHS contends the claim for an accounting "is made in conjunction with, not separate from, [the] breach of contract claim." (Resp. at 12.) WFUHS argues that the claim for an accounting "arises out of a right alleged to have been afforded [WFUHS] under the License Agreement" and that the claim for an accounting is pled as a legal, not equitable, remedy to the breach of contract cause of action. (Resp. at 12.)

In reply, the KCI entities argue that WFUHS's own argument demonstrates that its second cause of action is actually a request for specific performance—an equitable remedy— rather than a separate cause of action. The KCI entities maintain that a request for specific performance, like all equitable remedies, requires the absence of an adequate remedy at law, which WFUHS has not alleged. Finally, the KCI entities argue that WFUHS has not alleged

14

that it requested any inspection or audit of books and records that the KCI entities refused to allow. The KCI entities therefore argue that "to the extent that the second cause of action purports to allege a claim for breach of contract on this basis . . . it fails to do so, and should be dismissed accordingly." (Reply at 7.)

### 3. Analysis

In its response, WFUHS concedes that it is not attempting to assert a separate cause of action for an accounting. (*See* Resp. at 12) (stating that "on its face, [the] claim for an accounting is made in conjunction with, not separate from, [the] breach of contract claim"). Rather, WFUHS merely requests an accounting as one type of remedy for its breach of contract cause of action. Accordingly, to the extent that the claim for an accounting could be construed as an independent cause of action, the cause of action is dismissed without leave to amend. The request for an accounting remains pending insofar as it is a requested remedy for WFUHS's breach of contract claim.[16]

## D. Third Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing[17]

### 1. Allegations

In the Answer, WFUHS alleges the following in support of its cause of action for breach of the covenant of good faith and fair dealing:

> 72. Counterclaim Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

> 73. The License Agreement entered into by [WFUHS] and KCI is a valid and enforceable contract.

---

[16] The KCI entities do not dispute that WFUHS has stated a claim for breach of contract against Kinetic Concepts, Inc. and KCI USA, Inc. Thus, WFUHS's request for an accounting is supported by a live claim. Whether an accounting is an appropriate remedy for WFUHS's breach of contract claim can be decided at a later stage of litigation; it would be premature to make such a determination at this time.

[17] Again, because WFU concedes that it does not have standing to assert this cause of action, the Court will only address this cause of action as if it is being asserted by WFUHS.

74. The License Agreement contains covenants of good faith and fair dealing implied by law.

75. [WFUHS] has fully performed all of its obligations under the License Agreement.

76. Counterclaim Defendants have breached, and continue to breach, the covenants of good faith and fair dealing contained in the License Agreement.

77. As a direct and proximate result of Counterclaim Defendants' breach, [WFUHS has] been damaged in an amount to be proven at trial in excess of $75,000. [WFUHS is] continuing to suffer injury and resulting damages each day that the breach and repudiation continues.

**2. Arguments**

The KCI entities argue that the cause of action for breach of the covenant of good faith and fair dealing should be dismissed because it is duplicative of the breach of contract claim. The KCI entities argue that under North Carolina law, a breach of good faith claim should not be considered independently from a breach of contract claim unless there is a special relationship between the parties. The KCI entities therefore argue that WFUHS's claim for breach of the covenant of good faith and fair dealing should be dismissed because WFUHS has not alleged any "special relationship" between the parties that would give rise to an independent claim.

In response, WFUHS argues that its claim for breach of the covenant of good faith and fair dealing should not be dismissed because the claim may proceed "in parallel" with the breach of contract claim. WFUHS agrees that North Carolina law implies a covenant of good faith and fair dealing in every contract. However, WFUHS argues that the "implication of the covenant into every contract does not mean that a claim for breach of that covenant may not be asserted, only that it should be viewed *simultaneously* with the breach of contract claim."

(Resp. at 14) (emphasis in original). WFUHS further argues that "[e]ven though the covenant of good faith claim may derive from [the] breach of contract claims, it may still reach conduct that falls outside of the parties' express agreement." (Resp. at 14.)

In reply, the KCI entities reassert their argument that WFUHS has failed to state an independent cause of action for breach of the covenant of good faith and fair dealing because WFUHS has not alleged that a special relationship exists between itself and the KCI entities. The KCI entities therefore argue that the third cause of action for breach of the covenant of good faith and fair dealing should be dismissed, or in the alternative, consolidated with the first cause of action for breach of contract.

### 3. Analysis

Under North Carolina law, "[i]t is well-established that there is implied in every contract an obligation of good faith and fair dealing by each party in the performance of the agreement." *Dull v. Mut. of Omaha Ins. Co.*, 354 S.E.2d 752, 756 (N.C. Ct. App. 1987). North Carolina courts "do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties." *Meineke Car Care Centers, Inc. v. RLB Holdings, LLC*, No. 3:08-CV-240-RJC, 2009 WL 2461953, at *11 (W.D.N.C. Aug. 10, 2009), *rev'd on other grounds*, 423 F. App'x 274 (4th Cir. 2011).

In *Ada Liss Group v. Sara Lee Corp.*, No. 06-CV-610, 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010), a case that both sides cite in their briefs, the district court explained that because the covenant of good faith and fair dealing is implied in every contract under North Carolina law, "a claim for breach of that covenant typically is 'part and parcel' of a claim for breach of contract." *Id.* at 14 (quoting *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358,

368 (N.C. 1996)). The *Ada Liss* court went on to explain that "[b]ecause the implied covenant is simply a contract term not expressly included in the agreement, in most cases a breach of the covenant is simply another way of stating a claim for breach of contract." *Id.* In light of these explanations, the *Ada Liss* court held that the plaintiff's "stand-alone claim for breach of the implied covenant of good faith and fair dealing [was] coextensive with the claim for breach of contract and [would] not be treated as a separate claim." *Id.* at 15.

Here, WFUHS does not allege facts demonstrating, or even argue, that any special relationship exists in this case to justify the good faith claim being construed as a separate, independent cause of action. Rather, WFUHS simply contends that its good faith claim should be viewed "simultaneously" with the breach of contract claim and that "the implied covenant of good faith and fair dealing may be a useful tool in assessing" whether the KCI entities' conduct under the License Agreement was justified. Therefore, any separate, independent cause of action for breach of the covenant of good faith and fair dealing is dismissed without leave to amend.

However, neither side disputes that the License Agreement contains an implied covenant of good faith and fair dealing under North Carolina law and that a claim for breach of the covenant can be asserted in connection with the breach of contract cause of action. Nor do the KCI entities object to the claim for breach of the covenant of good faith and fair dealing being consolidated with the cause of action for breach of contract. Accordingly, the good faith claim remains pending insofar as it is coextensive with the claim for breach of contract.

**E. Fourth Cause of Action: Unjust Enrichment/Restitution**

**1. Allegations**

In their Answer, WFU and WFUHS allege the following in support of their cause of

action for unjust enrichment/restitution:

> 78. Counterclaim Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.
>
> 79. Counterclaim Plaintiffs entered into a relationship with Counterclaim Defendants in which Counterclaim Plaintiffs conferred benefits upon Counterclaim Defendants by, among other things, permitting Counterclaim Defendants to sell and lease products under the Patents and to use Counterclaim Plaintiffs' confidential information.
>
> 80. Counterclaim Defendants knowingly and voluntarily accepted those benefits.
>
> 81. Those benefits were not given gratuitously but instead were conferred upon Counterclaim Defendants with a reasonable expectation of payment.
>
> 82. Counterclaim Defendants have retained the benefits that Counterclaim Plaintiffs have conferred upon Counterclaim Defendants but have not paid Counterclaim Plaintiffs reasonable and fair market value for those benefits.
>
> 83. Because Counterclaim Defendants have not paid Counterclaim Plaintiffs reasonable and fair market value for the benefits that Counterclaim Plaintiffs have conferred upon Counterclaim Defendants, Counterclaim Defendants have been, and continue to be, unjustly enriched at the expense of Counterclaim Plaintiffs.
>
> 84. Counterclaim Plaintiffs are entitled to judgment in an amount to be proven at trial in excess of $75,000.

**2. Arguments**

In their motion to dismiss, the KCI entities argue that under both North Carolina and

Texas law, there can be no recovery on a claim for unjust enrichment where the unjust

enrichment claim is based upon rights and obligations contained in an express contract

between the parties. The KCI entities therefore argue that WFU's and WFUHS's claim for

unjust enrichment should be dismissed because WFU and WFUHS have not pled absence of an express contract.

In response, WFU and WFUHS argue that their unjust enrichment claim relates to wrongdoing that occurred after WFU and WFUHS terminated the License Agreement. WFU and WFUHS contend that although the KCI entities had a right to use WFU's and WFUHS's confidential and proprietary information and materials prior to termination of the License Agreement, the KCI entities had no right to use the information and materials after the License Agreement was terminated. WFU and WFUHS argue that they are entitled to compensation for the benefits conferred upon the KCI entities for which WFU and WFUHS have not been paid and urge that the fact that WFU and WFUHS were once parties to the License Agreement does not negate the existence of unjust enrichment claims that fall outside of the Agreement.

In reply, the KCI entities argue that WFU's and WFUHS's unjust enrichment claims are rooted in post-termination obligations under the License Agreement, pointing to the fact that WFU and WFUHS have alleged in their Answer that the License Agreement contains numerous post-termination obligations. The KCI entities therefore argue that the unjust enrichment claims must be dismissed because they are based upon the License Agreement's express terms.

### 3. Analysis

In order to prevail on a claim for unjust enrichment under North Carolina law, "a plaintiff must prove that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit." *Metric Constructors, Inc. v. Bank of Tokoyo–Mitsubishi,*

20

*Ltd.*, 72 F. App'x 916, 920 (4th Cir. 2003) (per curiam) (citing *Booe v. Shadrick*, 369 S.E.2d 554, 555-56 (N.C. 1988)). "An unjust enrichment claim is available only in the absence of an express contract between the parties." *Id.* "It is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 124 S.E.2d 905, 908 (N.C. 1962).[18]

With regard to the first element, WFU and WFUHS allege in their Answer that they "conferred benefits upon Counterclaim Defendants by, among other things, permitting Counterclaim Defendants to sell and lease products under the Patents and to use Counterclaim Plaintiffs' confidential information." (Answer, Counterclaims ¶ 79.) These allegations lack the requisite specificity to survive a motion to dismiss. The allegations do not identify the "products" or the "confidential information" at issue, nor do the allegations identify the specific KCI entities against which the unjust enrichment claims are being asserted. The rest of the Answer is likewise devoid of any specific, individualized allegations in support of the unjust enrichment claim. As a result, the Answer fails to give the KCI entities fair notice of the grounds upon which the unjust enrichment claim rests and, additionally, the Court cannot find that either WFU or WFUHS has stated a plausible claim for unjust enrichment against any KCI entity. WFU's and WFUHS's causes of action for unjust enrichment must therefore be dismissed.

The Court must now determine whether to grant leave to amend the unjust enrichment claim. The parties' briefs focus on whether there is an express agreement between the parties

---

[18] Texas law is in accord. *See, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . . That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.").

that covers the subject matter underlying the unjust enrichment claim. The Court will address the parties' arguments at this time because, if there is an express agreement between the parties that covers the relevant subject matter, amendment of the unjust enrichment claim would be futile.

As acknowledged in the Answer, the License Agreement contains several obligations that survive termination of the Agreement. (*See* Answer, Counterclaims ¶ 53.) These post-termination obligations cover the precise subject matter of the unjust enrichment claim. Specifically, the License Agreement provides that after termination of the Agreement, "KCI," which the License Agreement defines as Kinetic Concepts, Inc. and any affiliate of Kinetic Concepts, Inc., may "sell all Licensed Products, and complete Licensed Products in the process of manufacture at the time of such termination and sell or lease the same, provided that KCI will pay to [WFUHS] the royalties thereon as required by Section 4 and will submit the reports required by Section 9 on the sales of Licensed Products." (License Agreement ¶ 11.9.) The License Agreement also provides that upon termination, "each party will make no further use of the Confidential and Proprietary Information[19] and will promptly return to the other all written material which incorporates, or which is based on, or which derives from, or grows out of in whole or in part, any Confidential and Proprietary Information provided by the other party." (License Agreement ¶ 8.2.) It is undisputed that WFUHS and Kinetic Concepts, Inc. were parties to, and are bound by, the License Agreement. Accordingly, because there is an express agreement between WFUHS and Kinetic Concepts, Inc. that covers the subject matter underlying WFUHS's unjust enrichment claim, WFUHS's unjust enrichment claim

---

[19] The License Agreement defines "Confidential and Proprietary Information" as "[a]ll confidential information of either [WFUHS] or KCI transmitted to the other party in conjunction with [the] Agreement, whether prior to or subsequent to the execution of [the] Agreement, [that] is marked in writing as confidential." (License Agreement ¶ 8.1.)

against Kinetic Concepts, Inc. is dismissed without leave to amend because amendment would be futile.

However, the pleadings establish that WFU is no longer bound by the terms of the License Agreement because WFU assigned all of its rights under the License Agreement to WFUHS, and no allegations suggest that the subject matter of WFU's unjust enrichment claim is currently covered by an express contract to which WFU is a party. Thus, the Court cannot find that amendment of WFU's unjust enrichment claim would necessarily be futile.

Likewise, there is no indication, from the face of the License Agreement or from the pleadings, that KCI USA, Inc. or any of the KCI Affiliates was a party to the License Agreement or is a party to another express contract that covers the subject matter underlying the unjust enrichment claim. As a result, the Court cannot find that amendment of the unjust enrichment claim against the KCI Affiliates or KCI USA, Inc. would necessarily be futile.

The Court will therefore permit WFU to amend its unjust enrichment claim against all KCI entities. The Court will also permit WFUHS to amend its unjust enrichment claim against KCI USA, Inc. and the KCI Affiliates. The amended unjust enrichment claims must be supported by specific, individualized allegations.

## F. Fifth Cause of Action: Unfair and Deceptive Trade Practices (the "UDTPA Claim")[20]

### 1. Allegations

In their Answer, WFU and WFUHS allege the following:

---

[20] Although WFU and WFUHS allege violations of both North Carolina General Statutes § 75-1.1 and the common law, the parties do not distinguish between the statutory and common law claims in their briefs. The Court finds no reason to distinguish between the statutory and common law claims either. *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 1134453, at *16 (E.D.N.C. Jan. 25, 2011) ("The standard for violation of [§ 75-1.1] and common law unfair competition are not 'appreciably different.'" (quoting *BellSouth Corp. v. White Directory Publrs., Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999)). Accordingly, the Court will refer to the statutory and common law claims collectively as the "UDTPA claim."

85. Counterclaim Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86. Based on the foregoing allegations, KCI has engaged in conduct constituting unfair and deceptive trade practices and/or unfair competition in violation of N.C. Gen. Stat. § 75-1.1 and the common law.

87. KCI has committed willful unfair and deceptive trade practices and/or unfair competition by a number of acts taken to inequitably assert its power and position as alleged above, including but not limited to using its exclusive knowledge of information necessary to calculate the royalties due to [WFU and WFUHS] and intentionally misstating and hiding the correct information in order to avoid payment of millions of dollars that should have been paid to [WFU and WFUHS]. KCI's unfair and deceptive acts further include its failing to return, and instead making ongoing use of, [WFU and WFUHS]'s confidential and proprietary information and the studies, assessments, marketing information, manufacturing drawings and molds relating to the Licensed Products, in order to unfairly and unlawfully compete by interfering with [WFU and WFUHS]'s ability to license [their] patent rights to other manufacturers and to produce competing products.

88. KCI's conduct is unethical, unscrupulous and substantially injurious to [WFU and WFUHS] and will have a substantial effect on [WFU and WFUHS]'s operations.

89. The unfair and deceptive acts and practices of KCI were in or affecting commerce and caused injury to [WFU and WFUHS].

90. [WFU and WFUHS have] suffered and will continue to suffer substantial damage as a proximate result of KCI's unfair methods of competition and/or unfair or deceptive acts or practices and [WFU and WFUHS are] entitled to recover damages in an amount to be proven at trial in excess of $75,000, as well as treble or other exemplary damages, attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.

91. Furthermore, the Court should order KCI to immediately provide to [WFU and WFUHS] all of [WFU and WFUHS]'s confidential and proprietary information and all of the studies, assessments, marketing information, manufacturing drawings and molds relating to the Licensed Products.

## 2. Arguments

In their motion to dismiss, the KCI entities argue that the UDTPA claim may not

"piggyback" on the breach of contract cause of action and that, under North Carolina law, a

24

mere breach of contract is not sufficiently unfair or deceptive to sustain a UDTPA claim. The KCI entities argue that the UDTPA claim is merely a "rebranding" of the breach of contract allegations. The KCI entities therefore argue that the UDTPA claim should be dismissed because WFU and WFUHS have not pled any "substantial aggravating circumstances" above and beyond their breach of contract allegations.

In response, WFU and WFUHS argue that their allegations go beyond a mere breach of contract. Specifically, WFU and WFUHS argue that they have alleged two UDTPA violations: 1) that the KCI entities' continued use of confidential and proprietary information after the right to use such materials ended could be found to be unfair or unethical, and 2) that the KCI entities have intentionally misstated and hid correct information in order to avoid full payment of royalties, have systematically recharacterized various expenses in an improper manner, and have improperly taken deductions for payments never made.

In reply, the KCI entities urge that the theories supporting the UDTPA claim are identical to the breach of contract allegations. As a result, the KCI entities reassert their argument that WFU and WFUHS have not pled any "substantial aggravating factors" to support a UDTPA claim.

### 3. Analysis

North Carolina General Statutes § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). To prevail on a claim under § 75-1.1, a plaintiff must prove "(1) that the defendant was engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or had the capacity or tendency to deceive, and (3) that the

25

plaintiff suffered actual injury as a proximate result of the defendant's actions." *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (internal quotation marks omitted). "A trade practice is unfair if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Wachovia Bank & Trust Co., N.A. v. Carrington Dev. Assocs.*, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995). "A particular practice is to be deemed deceptive, and in violation of [section 75-1.1], if it has 'the capacity or tendency to deceive.'" *S. Atl. Ltd. P'ship*, 284 F.3d at 536 (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).

North Carolina courts "differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Hageman v. Twin City Chrysler-Plymouth Inc.*, 681 F.Supp. 303, 306-07 (M.D.N.C. 1988)). As the Fourth Circuit has explained:

> [North Carolina law] does not permit a party to transmute a breach of contract claim into a tort or UDTPA claim for extraordinary damages because awarding punitive or treble damages would destroy the parties' bargain and force the defendant to bear a risk it never took on. Recognizing this principle, North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [section 75-1.1.] Instead, under North Carolina law a plaintiff must show substantial aggravating circumstances attending the breach to establish a UDTPA claim.

*PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) (citations and quotations marks omitted).

Federal courts in North Carolina applying these standards have refused to allow UDTPA claims to proceed when the defendant's alleged misconduct directly relates to the defendant's performance under the terms of a contract. *See Wireless Commc'ns, Inc. v. Epicor Software Corp.*, No. 3:10-CV-556-DSC, 2011 WL 90238, at *4-6 (W.D.N.C. Jan. 11, 2011) (dismissing a plaintiff's UDTPA claim where the defendant allegedly made misrepresentations to induce the plaintiff to enter into a contract, make payments, and continue to buy additional products, reasoning that the "heart" of the claim was the performance of a contract and that the fraudulent statements about the products did not change the fact that the statements were "directly related" to the defendant's performance of essential portions of the contract); *ACS Partners, LLC v. Americon Group, Inc.*, No. 3:09-CV-464-RJC-DSC, 2010 WL 883663, at *9-10 (W.D.N.C. Mar. 5, 2010) (recommending dismissal of a plaintiff's UDTPA claim where the plaintiff's allegations that the defendant misused the plaintiff's pricing scheme and solicited the plaintiff's clients "directly relate[d]" to the breach of non-compete and confidential disclosure agreements); *Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc.*, No. 3:07-CV-320-GCM, 2008 WL 906319, at *4-5 (W.D.N.C. Apr. 1, 2008) (dismissing a plaintiff's UDTPA claim where the defendant allegedly induced the plaintiff to continue a contract by making negligent and fraudulent misrepresentations regarding the status and projected delivery date of software, reasoning that the "heart" of the plaintiff's allegation was the performance of a contract and the alleged statements made by the defendant "directly related" to the defendant's performance of the contract).

Here, WFU and WFUHS have failed to plead a plausible UDTPA claim because the alleged misconduct that serves as the basis for their UDTPA claim directly relates to conduct

that is covered by the License Agreement and there are no allegations of any aggravating factors that would support UDTPA liability.

In their Answer, WFU and WFUHS support their UDTPA claim by collectively alleging that "KCI" misstated and hid information necessary to calculate royalties due and failed to return confidential and proprietary information in order to unfairly and unlawfully compete with WFU and WFUHS. This alleged misconduct is covered by the License Agreement, which specifically requires proper reporting and royalty payments to WFUHS and requires the return of all confidential and propriety information after termination of the Agreement. Furthermore, not only is the alleged misconduct covered by the License Agreement, but the allegations underlying the UDTPA claim are equally applicable to the breach of contract cause of action.[21] While it is true that, in support of their UDTPA claim, WFU and WFUHS allege that the misconduct was willful, intentional, and inequitable, Fourth Circuit case law is clear that even an intentional breach of contract does not support liability for a UDTPA claim. Nowhere in the Answer do WFU and WFUHS allege any aggravating circumstances that would suggest that the alleged misconduct was sufficiently unfair or deceptive to support UDTPA liability.[22]

---

[21] Indeed, the allegations in support of the breach of contract cause of action are nearly identical to the allegations offered in support of the UDTPA claim. Specifically, in support of the cause of action for breach of contract, the Answer asserts that the KCI entities "ha[ve] breached and continue[] to breach the License Agreement" by, *inter alia*, "[f]ailing to timely submit correct Semi-Annual Reports," "[f]ailing to timely submit full royalty payments, including but not limited to failures due to improper calculations of Net Sales and improper deductions under the License Agreement," and "[f]ailing to return, and instead making ongoing use of, [WFU and WFUHS]'s Confidential and Proprietary Information." (Answer, Counterclaims ¶ 61.)

[22] In their response, WFU and WFUHS point to the fact that the factual background section of the Answer alleges that the KCI entities "systematically" recharacterized various expenses in an improper manner and that they improperly took deductions for payments never made. (*See* Resp. at 19) (citing Answer, Counterclaims ¶¶ 44-45). However, again, these allegations fall within the purview of the License Agreement and are equally applicable to both the breach of contract cause of action and the UDTPA claim. WFU and WFUHS also argue in their response that the KCI entities' ongoing use of information and materials after termination of the License Agreement "goes beyond" a breach of contract allegation. However, this argument is overruled because the License Agreement

In their response, WFU and WFUHS cite *Maxwell v. Phillips*, No. 1:06-CV-510, 2007 WL 2156337 (M.D.N.C. July 25, 2007), in which the district court found sufficient "aggravating circumstances" that would give rise to a UDTPA claim. However, in *Maxwell*, the plaintiff had pled claims for fraud, conversion, and breach of fiduciary duty that were sufficient to survive a motion to dismiss. Here, WFU and WFUHS have not pled any such viable accompanying tort claims. WFU and WFUHS also cite *Capital Factors, Inc. v. The Fryday Club, Inc.*, 209 F. Supp. 2d 583 (W.D.N.C. 2002), for the proposition that "sound policy" dictates "that parties do not sacrifice other extra-contractual rights just because they have a contract." However, in *Capital Factors*, the district court noted that the alleged misconduct in that case "could not be dealt with solely through contract law" because the misconduct was outside the scope of the contract at issue. *Id.* at 585. Here, however, the alleged misconduct falls squarely within the purview of the License Agreement and therefore must be relegated to the realm of contract law.[23]

In sum, because the essence of the UDTPA claim involves the performance of a contract, and because WFU and WFUHS have not alleged sufficient aggravating factors to support UDTPA liability, WFU's and WFUHS's UDTPA claims against all KCI entities are dismissed without leave to amend.

## IV. Conclusion

In light of the foregoing analysis, the KCI entities' motion to dismiss (Doc. No. 53) is GRANTED. The Court ORDERS as follows:

---

contains numerous obligations that survive termination of the Agreement, several of which cover the alleged misconduct that serves as the basis for the UDTPA claim.

[23] In *Capital Factors*, the counterclaim plaintiff had alleged that the counterclaim defendant deliberately misappropriated funds, failed to credit accounts, and wholly failed to provide information. The alleged misconduct in this case, by contrast, is not so egregious.

29

All of WFU's claims against all of the KCI entities are dismissed. WFU may amend its claim for unjust enrichment against all of the KCI entities. The rest of WFU's claims are dismissed without leave to amend.

WFUHS's claims for an accounting, breach of the covenant of good faith and fair dealing, and unfair and deceptive trade practices and unfair competition against all of the KCI entities are dismissed without leave to amend. WFUHS's claim for unjust enrichment against Kinetic Concepts, Inc. is also dismissed without leave to amend.

WFUHS's claim for unjust enrichment against KCI USA, Inc. and the KCI Affiliates is dismissed with leave to amend. WFUHS's claim for patent infringement against the KCI Affiliates is dismissed with leave to amend. Although WFUHS's patent infringement claim remains pending against Kinetic Concepts, Inc. and KCI USA, Inc., WFUHS should amend the claim to provide individualized allegations.

WFUHS's breach of contract claim remains pending against Kinetic Concepts, Inc. and KCI USA, Inc. WFUHS's request for an accounting and claim for breach of the covenant of good faith and fair dealing remain pending in connection with WFUHS's cause of action for breach of contract. In any future pleadings, WFUHS should omit KCI USA, Inc. as a counterclaim-defendant to the breach of contract cause of action unless WFUHS provides additional factual allegations demonstrating that KCI USA, Inc. was a party to the License Agreement.

WFU and WFUHS are ORDERED to file amended counterclaims by no later than June 19, 2013.

It is so ORDERED.

SIGNED this 4th day of June, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE