**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KINETIC CONCEPTS, INC., and KCI USA, INC., | § § § | |
| *Plaintiffs*, | § § | |
| | § | **Consolidated Civil Action Nos.** |
| v. | § | SA-11-CV-163-XR and SA-11-CV-713-XR |
| | § | |
| WAKE FOREST UNIVERSITY HEALTH SCIENCES, | § § § | |
| *Defendant*. | § § | |
| _____ | § | |
| | § | |
| WAKE FOREST UNIVERSITY and WAKE FOREST UNIVERSITY HEALTH SCIENCES, | § § § | |
| | § | |
| *Plaintiffs*, | § § | |
| v. | § § | |
| KINETIC CONCEPTS, INC., KCI USA, INC., KCI LICENSING, INC., KCI MEDICAL RESOURCES, MEDICAL HOLDINGS LIMITED, and KCI MANUFACTURING, | § § § § § § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Wake Forest University's ("WFU") partial motion

for summary judgment arguing that Kinetic Concepts Inc. ("KCI") should be estopped from

using certain prior art references in this patent case.  Doc. No. 133.   For the following reasons,

that motion is DENIED.    In addition, the Court has considered KCI's motion for summary judgment of no willful infringement.  Doc. No. 152.   That motion is GRANTED.

## BACKGROUND

In October of 1993, KCI and WFU entered into a partnership to develop and sell Negative Pressure Wound Treatment ("NPWT") products. This technology had first been developed by WFU researchers Dr. Louis Argenta and Dr. Michael J. Morykwas.  NPWT products work by using differentials in air pressure to promote tissue migration to close open wounds.  Due to their success in closing wounds, NPWT products have become commonplace in hospitals and within the military.

The parties entered into a licensing agreement that granted KCI and its affiliates the exclusive rights to certain NPWT patents owned by WFU.  The patents at issue in this case are United States Patents 5,636,643 ("the '643 patent"), 5,645,081 ("the '081 patent"), 7,198,046 ("the '046 patent"), and 7,216,651 ("the '651 patent").  In return for these rights, KCI agreed to pay WFU royalties on the NPWT products it sold.  KCI has incorporated the Patents into its Vacuum Assisted Closure Therapy System ("V.A.C. System") and other wound care products.

KCI first introduced the V.A.C. system in 1996.  The NPWT market expanded rapidly during the second half of the 1990s, turning into a billion-dollar industry.  KCI's competitors began to develop similar wound closure devices based on the same or similar technology.  As a result, KCI filed and/or joined seven lawsuits in the U.S. to defend the validity and scope of the patents against would-be infringers seeking to enter the lucrative NPWT market.[1]  KCI

---

[1] *Kinetic Concepts, Inc. v. Med. Ctr. of Louisiana*, Civ. No. 1-cv-2950 (E.D. La.) (asserting  081 and 643 Patents); *Kinetic Concepts, Inc. v. Botsford Gen. Hosp.*,Civ. No. 3-cv-70135 (E.D. Mich.) (asserting  081 and 643 Patents); *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, Civ. No. 3-cv-832 (W.D. Tex.) (asserting 081 and 643 Patents) ("*Bluesky I*"); *Kinetic Concepts, Inc. v. Bluesky Med. Grp., Inc.*, Civ. No. 8-cv-102 (W.D. Tex.) (asserting 081, 643 and 651 Patents) ("*Bluesky II*"); *Kinetic Concepts, Inc. v. Medela AG*, Civ. No. 8-cv-87(W.D.

also defended its interest in WFUHS' patents abroad.  KCI and WFU spent years as allied co-parties during these cases, some of which were appealed to the Federal Circuit.  The parties dispute what was argued and held in these cases, and two of these cases are of special relevance to the current case.

In 2003, the parties sued Bluesky, a major KCI competitor, on the '081 and '643 patents ("*Bluesky I*").  Bluesky alleged numerous defenses. In particular, Bluesky claimed that the patents were invalid as obvious.  The prior art that Bluesky assembled, some of which is being asserted again here by KCI, was insufficient to convince a jury that the patents were obvious, and the district court entered a judgment of no invalidity. *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, SA-03-CV-832-WRF, 2007 WL 1113085 (W.D. Tex. Apr. 4, 2007).  Bluesky appealed, and the Federal Circuit affirmed the non-obviousness findings along with all of the other district court findings.  *Kinetic Concepts, Inc. v. Bluesky Med. Grp., Inc.*, 554 F.3d 1010 (Fed. Cir. 2009).

By 2007, Bluesky had been acquired by Smith & Nephew, another major KCI competitor.  KCI and WFU jointly brought suit again to enforce the patents ("*Bluesky II*").  Smith & Nephew attacked the validity of the patents on the grounds of obviousness and that the patents lacked a sufficient written description.   A jury panel disagreed and found that the patents were not invalid.  The district court in *Bluesky II* then granted Smith and Nephew's motion for judgment as a matter of law, in effect invalidating large portions of the patents in suit here. *Kinetic Concepts, Inc. v. Bluesky Med. Grp., Inc.*, Civ. No. 08-cv-102 (W.D. Tex. Oct. 18, 2010).   After this development, KCI initially joined WFU in an appeal, but later

Tex.) (asserting 651 Patent) ("Medela"); *Wake Forest Univ. Health Sci. & Kinetic Concepts, Inc. v. Innovative Therapies*, *Inc*., Civ. No. 8-cv-32 (M.D.N.C) (asserting 081, 643 and651 Patents); and *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, Civ. No. 8-cv-918 (M.D.N.C) (asserting 081, 643 and 651 Patents) ("ConvaTec").

withdrew from the lawsuit.  WFU successfully appealed the trial court's granting of JMOL to the Federal Circuit, which held that the district court had erred by "failing to defer to the jury's factual findings." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.* 688 F.3d 1342, 1371 (Fed. Cir. 2012).

KCI commenced this lawsuit by filing its Original Complaint in this Court on February 28, 2011, seeking: (1) a declaratory judgment that Kinetic Concepts, Inc. and KCI USA, Inc. owe no royalties under the License Agreement for sales of the V.A.C. System based on the Patents; (2) a declaratory judgment that the Patents that cover the V.A.C. System are invalid; and (3) a declaratory judgment that the V.A.C. System does not infringe any valid or enforceable claim of the Patents.  Doc. No. 1.

On March 18, 2011, WFU terminated the License Agreement and filed a lawsuit in a North Carolina state court seeking damages for (1) breach of contract; (2) "breach of contract and audit and accounting;" (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment/restitution; (5) unfair and deceptive trade practices and unfair competition in violation of North Carolina General Statutes § 75-1.1; and (6) patent infringement.  This suit was removed to the U.S. District Court for the Middle District of North Carolina and subsequently transferred here on August 26, 2012.  On December 26, 2012, the two cases were combined into this action.

On July 29, 2013, WFU filed a motion for summary judgment of no invalidity on the basis of judicial estoppel.  Doc. No. 80.  On September 18, 2013, this Court held a claims construction hearing and also heard oral argument on the motion for summary judgment.  On November 25, 2013, the Court entered an order denying WFU's motion for summary

judgment on judicial estoppel grounds and construing the six contested claims.  Doc. No. 126. On January 30, 2014, WFU filed the instant motion for summary judgment.  Doc. No. 133. KCI filed its motion for summary judgment on February 21, 2014.  Doc. No. 152.  The issues have been fully briefed and a hearing on these motions was held on April 8, 2014.

## II. LEGAL STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. DISCUSSION

**1. WFUHS' Partial Motion for Summary Judgment – Judicial Estoppel**

This Court has already denied WFU's dispositive motion for summary judgment on the basis of judicial estoppel. Doc. No. 126. In light of the strong federal policy of encouraging patent validity challenges, the Court held that it was not "clearly inconsistent" for KCI to change its overall position on validity because it is now asserting new examples and combinations of prior art that were not previously litigated. *Id.* WFU now seeks partial summary judgment, preventing KCI from changing positions on how specific prior art references that were litigated in earlier cases render certain claims invalid for obviousness or anticipation. Doc. No. 133.

In the Fifth Circuit, a court *may* apply judicial estoppel when: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc)).[2] In addition, courts may consider "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742 (2011).

Judicial estoppel is a discretionary doctrine. *Id.* at 750. KCI asserts that this Court has already ruled on the applicability of judicial estoppel to the facts of this case and should not revisit the issue. Doc. No. 136. The Court again declines to exercise its discretion to

---

[2] Courts apply the judicial estoppel law of their regional circuit. *Source Search Techs., LLC v. LendingTree, LLC,* 558 F.3d 1063, 1071 (Fed. Cir. 2009).

apply the doctrine in this case.  However, since WFU has identified language in this Court's prior order that it contends left the door open for this second judicial estoppel challenge, the Court will address why application of the doctrine would be inappropriate in this context.

WFU seeks to bar KCI from advancing certain obviousness/anticipation arguments on the basis of individual prior art references and combinations thereof.  Doc. No 133.  WFU asserts that in prior litigation, KCI took the position that these prior art references did not invalidate the patents, and that it should be estopped from making any argument to the contrary in this case.  *Id.*   WFU seizes on language in the Court's prior judicial estoppel analysis finding that "[a] subsequent position is only 'clearly inconsistent' if the same combination of prior art is being asserted."  Doc. No. 126 at 11.   However, this language must be read in light of the fact that a patent challenger does not "assert" prior art in a vacuum, but instead in the context of a validity challenge.

In this case, for example, KCI argues that WFU's patents are invalid under 35 U.S.C. § § 103 (obviousness) and 102 (anticipation).  "Under 35 U.S.C. § 103, a patent claim is invalid 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 619 F.3d 1329, 1336 (Fed. Cir. 2010) (internal citations omitted).  This inquiry focuses on: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; and (3) the differences between the claimed invention and the prior art.  *KSR Int' Co. v. Teleflex Inc.*, 550 U.S. 398 (2006) (citing *Graham v. John Deere Co.*, 383 U.S. 398 (1966)).  In addition, an anticipation challenge under § 102 requires determining whether the claimed invention is

disclosed by or inherent in an individual or collective prior art reference. *See Schering Corp. v. Geneva Pharm, Inc.,* 339 F.3d 1373 (Fed. Cir. 2003).    The scope of the claimed invention, relevant to both validity inquiries, is defined by how a court construes the patent claims. *Markman v. Westview Instruments, Inc.*, 53 F.3d 967, 978 (Fed. Cir. 1995); *see also Scimed Life Sys. v. Johnson & Johnson*, 87 F. App'x 729, 734 (Fed. Cir. 2004) ("Claim interpretation is the first step of a validity analysis.").   When a party takes a position in a validity dispute, its position is therefore necessarily defined in reference to *both* the prior art and the properly construed claims.  Thus, to the extent that there are new claims constructions in this case, it is impossible to conclusively say that KCI is asserting a "clearly inconsistent" position with respect to obviousness or anticipation.

WFU next contends that the claims constructions have not changed since KCI took its initial position on validity in *Bluesky I* and *Bluesky II*.  Doc. No. 133 at 14-15.  To be sure, in its claims construction order, the Court remained faithful to the Federal Circuit's treatment of the various claims under *stare decisis*.  That does not mean, however, that the claims in this case are identical to those used in prior cases.  This Court construed the terms "healing," "selected stage of healing," "wound," "area of skin including and surrounding the wound," and "tissue surrounding the wound."  *See* Doc. No. 126.  These exact terms and phrases were never construed by another court in litigation involving these patents.  Although this Court looked to prior cases involving these patents to construe these claims, it also conducted its own independent analysis where appropriate. [3]  Consequently, the Court finds that, for the

---

[3] For example, in *Bluesky I* and *Bluesky II*, there was no distinction between the terms "treating" and the term "healing." In this case, consistent with the Federal Circuit's decision in *Bluesky II*, the Court construed healing as "facilitating wounds towards closure."  However, the Court also found that treating did not require a construction, thus creating a fact issue for the jury as to whether "healing" and "treating" impose the same limit on the scope of the claims in which they appear.

purposes of the judicial estoppel analysis, the claims have changed enough that KCI should not be precluded from changing its position on what prior art references indicate with respect to its validity challenges.[4]

WFU asks the Court to be faithful to its prior order on judicial estoppel.  By allowing KCI to change its overall position on validity, this Court anchored its judicial estoppel analysis in the strong federal policy favoring validity challenges.  Although WFU argues to the contrary, granting its renewed judicial estoppel motion would undermine KCI's ability to test the validity of these patents.  As the patent challenger, KCI has the burden of proving invalidity by clear and convincing evidence.  *See Microsoft Corp. v. i4i Ltd. P'Ship*, 131 S.Ct. 2238, 2242 (2011).  It makes no sense for this Court to allow KCI to change its position on validity, and then to subsequently strip away its ability to meaningfully test the validity of these patents.  As a result, granting WFU's motion here would ultimately be inconsistent with this Court's prior order that appropriately subordinated judicial estoppel to the substantive law of patents, which favor validity challenges.

The Supreme Court has reiterated that numerous considerations "may inform … [judicial estoppel's] application in specific factual contexts," and that application of the doctrine is not governed by "inflexible prerequisites or an exhaustive formula." *New Hampshire*, 532 U.S. at 751.  In light of the totality of circumstances in this case, and in deference to the strong federal policy favoring patent challenges, the Court reaffirms its prior decision not to apply judicial estoppel to this case.[5]

---

[4] Alternatively, it is impossible to say with certainty that all of KCI's prior positions with respect to each prior art reference at issue in this motion were accepted by the juries in *Bluesky I* and *Bluesky II*.

[5] This ruling does not mean KCI's change of position is irrelevant to the case.  Should this case proceed to trial, WFU is entitled to present evidence to the jury on KCI's change of position in an effort to discredit its current views on validity.

**2.  KCI's Motion for Summary Judgment of No Willful Infringement.**

KCI argues that it is entitled to summary judgment on WFU's claim for enhanced damages based on willful infringement.  Doc. No. 152.   To obtain enhanced damages under 35 U.S.C. § 284, WFU must show that KCI willfully infringed its patents by clear and convincing evidence.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). *Seagate* establishes a two-prong test for willful infringement.  First, a patentee must establish an objective prong by showing that the alleged "infringer acted despite an objectively high likelihood that its actions constituted infringement." *Id.* at 1371.  Second, the patentee must also demonstrate a subjective prong by showing that the objective risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Id.*  KCI asserts that WFU will be unable to show that KCI acted despite an objectively high risk that the patents were valid.[6]  Doc. No. 152.

The objective prong of the *Seagate* analysis is a threshold inquiry.   *Bard Peripheral Vascular Inc., v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).  In *Bard*, the Federal Circuit held that the objective reasonableness of the accused infringer's conduct is a question of law for the Court to decide.  *Id.* at 1006-07.   If a patentee does not establish the objective unreasonableness of the alleged infringer's conduct, the Court "cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong." *Powell v. Home Depot USA, Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011).   The Federal Circuit has held that a patentee will not meet its burden where an accused infringer relies on a reasonable defense to a charge of infringement.   *Spine*

---

[6] Only the objective prong of the *Seagate* analysis is before the Court.

*Solutions, Inc., v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010). It is appropriate to grant summary judgment of no willful infringement when it is apparent that the patentee will be unable to show that the accused infringer acted with objective recklessness. *Powell*, 663 F.3d at 1236; *Advanced Fiber Technologies (AFT) Trust v. J & L Fiber Services, Inc.*, 674 F.3d 1365, 1377 (Fed. Cir. 2012).

In this case, KCI has a reasonable defense to WFU's claim of infringement. A party cannot infringe an invalid patent. *Id.* (noting that reasonable claim of invalidity constitutes a reasonable defense to infringement). Without taking a position on the merits of KCI's contentions, KCI has marshaled a wide variety of prior art, some of which has been previously litigated with respect to these patents and some of which is new, to challenge validity. Based on the volume and scope of this prior art, the Court finds that a "reasonable litigant could realistically expect" that the patents in suit are invalid. *See Bard*, 682 F.3d at 1008 (internal citations omitted)(finding that if a reasonable litigant could expect patents to be invalid there can be no willful infringement). The initial observation that KCI has a non-frivolous defense to infringement does not end the analysis, which is complicated in this case by the unique history of litigation surrounding these patents.

At the time this case began, many of the claims at issue in this case had been declared invalid in *Bluesky II* by Judge Furgeson's order granting Smith & Nephew's motion for judgment as a matter of law ("JMOL"). *See* Doc. No. 152, Ex. 7 (*Bluesky II* JMOL Order). KCI's objective reliance on the JMOL was reasonable as a matter of law because the granting of JMOL is an extraordinary remedy. Stated differently, an objective party in KCI's position was entitled to rely on Judge Furgeson's JMOL order. The Federal Rules provide that JMOL

is only appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1). "Entry of JMOL is inappropriate unless the jury's verdict is unsupported by substantial evidence or premised on incorrect legal standards." *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1325 (Fed. Cir. 2001). Consequently, Judge Furgeson's JMOL order essentially held that no reasonable juror could find these patents valid on the basis of Smith & Nephew's evidence. Judge Furgeson found "by clear and convincing evidence that the claims asserted in the patents in suit are invalid as obvious." Doc. No. 152, Ex. 7 at 37. (*Bluesky II* JMOL Order). Against this backdrop, it is difficult to see how WFU can establish by clear and convincing evidence that KCI's belief that the patents were invalid was objectively unreasonable. This Court is unwilling to find as a matter of law that reliance on a federal district judge's well-reasoned, if ultimately reversed, thirty-seven page opinion is objectively unreasonable conduct.

WFU argues, both in its briefing and at oral argument, that KCI sharply criticized Judge Furgeson's JMOL order. *See* Doc. No. 158. While that may be factually accurate, such evidence pertains to the subjective prong of the *Seagate* analysis. With respect to the objective prong, the Court is only concerned with whether a reasonable litigant in KCI's position would be entitled to rely on a district court's JMOL order. The Court concludes that such reliance is reasonable.[7]

WFU attacks KCI's reliance on Judge Furgeson's JMOL order by citing to *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 1:09-CV-1685, 2013 WL

---

[7] WFU argues that Judge Furgeson's JMOL order only considered several of the claims at issue in this case and therefore KCI cannot rely on it with respect to the other patents that the order did not address. Doc. No. 158. The Court agrees with KCI that the claims addressed by Judge Furgeson's order were substantially similar to the claims at issue in this case. Moreover, the fact that the JMOL order only addressed a subset of claims necessarily means that the Federal Circuit's decision in *Bluesky II*, on which WFU itself relies, also only addressed a subset of the claims at issue in this case.

1465403 (M.D. Pa. Apr. 11, 2013).   In *Kimberly-Clark*, a district court held that an accused infringer could not rely on a later-reversed judicial opinion in order to obtain summary judgment of no willful infringement.   *Id.*   The court justified its holding by noting that, "as the party moving for summary judgment, [the alleged infringer] must do more than merely persuade us that its defenses were reasonable." *Id.* at *2.   This language implicitly recognizes that the accused infringer's reliance on a previous invalidity order was "reasonable," but that such a defense was insufficient for summary judgment of no willful infringement.   However, the Federal Circuit has expressly recognized that a "reasonable" defense to infringement tends to negate willful infringement. *Spine Solutions,* 620 F.3d at 1319.   In addition, the *Kimberly-Clark* court denied summary judgment because "a reasonable finder of fact could plausibly find willful infringement."   *Kimberly-Clark,* 2013 WL 1465403 at *2.   While it is normally appropriate to deny summary judgment when there are fact issues, the Federal Circuit is clear that the objective prong of *Seagate* is legal question that must be resolved before willfulness can be put to a jury.   *Bard*, 682 F.3d at 1005.   Thus, under *Bard*, this Court is not at liberty to send the question of KCI's objective reasonableness to the jury.   Given the disparities between how the *Kimberly-Clark* court analyzed the issue and clear Federal Circuit precedent, this Court does not find WFU's reliance on *Kimberly-Clark* persuasive.

Notably, KCI does not solely rely on Judge Furgeson's JMOL order to justify the objective reasonableness of the belief that the patents were invalid.   In addition, KCI argues that WFU will be unable to show that its conduct was objectively unreasonable because: (1) several foreign courts had invalidated the patents; and (2) KCI was relying on the opinion of counsel.   Doc. No. 152.   First, the Court agrees with WFU to the limited extent that the

foreign rulings do not greatly impact the analysis.   To be sure, there are times when a foreign ruling can bear on the objectiveness inquiry.  *See BIC Leisure Prods., Inc., v. Windsurfing Int'l Inc.*, 1 F.3d 1214, 1224 (Fed. Cir. 1993) (finding that results of a U.K proceeding could strengthen accused infringer's belief that patents were invalid).  However, in this case, KCI has not explained *how* the holdings of these foreign tribunals offered them any reasonable indication that the patents would be invalid in the U.S. legal system.  Accordingly, the Court does not accord much weight to KCI's reliance on the foreign rulings invalidating these patents.

        KCI's opinion of counsel letters are relevant and support KCI's contention that its conduct was objectively reasonable.  *See Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008) (opinion of counsel letters relevant to willfulness analysis).   It is settled that it was not necessary for KCI to obtain an opinion of counsel letter to defeat a claim of willful infringement.  *Seagate*, 497 F.3d at 1374.   At the same time, the mere presence of opinion letters does not render the accused infringer's conduct objectively reasonable.  *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 810 (Fed. Cir. 2007).

        WFU argues that KCI's initial two opinion letters were themselves objectively unreasonable. Doc. No. 158.   While the analysis contained in these letters was, to a large degree, ultimately rejected by the Federal Circuit in *Bluesky II*, the letters themselves were not "incompetent," such that KCI could not have reasonably relied on them.  The premise of WFU's argument is that it is clear that these patents are not invalid and that, consequently, any contrary opinion must be incompetent.  Without taking a position on validity, the Court notes that the sheer volume of litigation surrounding these patents belies the notion that their validity

14

is a cut and dry issue that only an incompetent attorney could question.  As noted, KCI is not relying on the opinion letters alone, but in conjunction with Judge Furgeson's JMOL order. When one views this evidence collectively, WFU's path to proving by clear and convincing evidence that KCI acted with objective recklessness becomes difficult to conceptualize.

This does not end the inquiry because the Court will consider, to an extent, KCI's post-filing conduct.  The parties strenuously dispute the relevance of post-filing conduct to the willfulness analysis when a patentee does not move for a preliminary injunction.  In *Seagate*, the Federal Circuit suggested that "[a] patentee who does not attempt to stop an accused infringer's activities should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."  *Seagate*, 497 F.3d at 1360.  Subsequently, some district courts have required a patentee to move for a preliminary injunction as a prerequisite to obtaining enhanced damages for willful infringement.  *See Baxter Healthcare Corp., v. Fresnius Med. Care Holdings, Inc.*, No. 07-1359 2010 WL 668039 (N.D. Cal. Feb 19, 2010); *Investment Tech. Group Inc., v. Liquidnet Holdings, Inc.*, 759 F.Supp 2d. 387, 410 (S.D.N.Y. 2010).  KCI argues that this Court should do likewise.  Doc. No. 152.

As WFU notes, other district courts do not read *Seagate* as imposing a *per se* requirement that a patentee move for an injunction. *See Krippelz v. Ford Motor Co.*, 670 F.Supp. 2d 806, 812 (N.D. Ill 2009) ("the proposition that failure to seek a preliminary injunction constitutes a forfeit of a claim for willful infringement is neither absolute nor a general rule applicable to all patent cases");  *DataQuill Ltd. V. High Tech Computer Corp.*, 887 F.Supp. 2d 999, 1015 (S.D. Cal. 2011).   The Court agrees that WFU's decision not to seek injunctive relief does not bar this Court from considering KCI's post-filing conduct.

WFU is a non-practicing entity.   As such, its ability to prove irreparable harm at the preliminary injunction stage might reasonably be questioned. *See High Tech Med. Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) (finding that while non-practicing patentee could obtain an injunction "the lack of commercial activity by the patentee is a significant factor" in assessing irreparable harm.).   There is no point to force a non-practicing patentee to go through the motions of seeking an injunction when they have little chance of obtaining such relief.[8]

In light of this, the Court turns to KCI's post-filing conduct.  Admittedly, the objective reasonableness of KCI's belief that the patents were invalid becomes more complex after the Federal Circuit issued its decision in *Bluesky II*.  On August 12, 2012, the Federal Circuit reviewed Judge Furgeson's JMOL order *de novo* and overturned it, in effect reinstating the patents.   *Bluesky II*, 688 F.3d 1342 (Fed. Cir. 2012).   The Federal Circuit concluded that "on this record, [Smith & Nephew] has not proven by clear and convincing evidence that the asserted claims are obvious.  The district court committed error by failing to defer to the jury's factual findings and granting JMOL on obviousness." *Id.* at 1371.

As reflected by how it construed the claims in this case, this Court is bound by the Federal Circuit's decision in *Bluesky II* under *stare decisis*.  However, the question presented here is whether it was objectively reckless for KCI to persist in its belief that the patents were invalid in the face of the *Bluesky II* decision.    Patents may only be found invalid or not invalid. *Durango Assoc., Inc. v. Reflange, Inc.*, 843 F. 2d 1349, 1356 n.4 (Fed. Cir. 1988) ("A patent should not be declared 'valid' by a court because other challengers may prove invalidity

---

[8] In addition, even if the non-practicing patentee did obtain a preliminary injunction, the effect would be to remove the infringing product from the marketplace while the litigation was ongoing.  Such a legal rule inappropriately puts the consumer marketplace on hold while the parties litigate.

using different evidence."). Following *Bluesky II*, a reasonable litigant in KCI's position would be put on notice that a reasonable juror *could* find the patents not invalid in relation to the evidence presented in that case.[9] By reinstating the jury's verdict, the Federal Circuit's decision does not mean that a party would necessarily be "reckless" in believing the patents were invalid. *Cf. Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1337 (Fed. Cir. 2009) (affirming district court's granting of JMOL of no willful infringement where "[t]he jury could have reasonably found for either party on the question of equivalence."). This is especially true in circumstances where the accused infringer has identified new prior art that was not initially before the Federal Circuit.[10] Framed differently, since the Federal Circuit has not taken a position on whether the new prior art would change its analysis, KCI was not necessarily objectively reckless in believing that the patents could be found invalid as against a new set of evidence. Moreover, as noted herein, the Court has found that KCI has a non-frivolous claim that the patents are invalid. Consequently, the Federal Circuit's decision in *Bluesky II* does not preclude a finding of no willful infringement.

The impact of a subsequent Federal Circuit reversal on the objective prong of the willfulness analysis was addressed by another district court in *Solvay, S.A. v. Honeywell Specialty Materials LLC*, 827 F. Supp. 2d 585 (D. Del. 2011). In *Solvay*, the alleged infringer sought and obtained summary judgment of invalidity. *Id.* The Federal Circuit later reversed. *Id.* Like KCI, the alleged infringer then moved for summary judgment of no willful infringement. The district court granted the motion, finding that the alleged infringer's

---

[9] The fact that validity even went to the jury in the first place suggests that it was a close call. Both parties would presumably agree that it is not uncommon for an otherwise objectively reasonable party to disagree with a jury finding in a contested patent case.
[10] WFU has conceded in its judicial estoppel motion that KCI is advancing a substantial amount of new prior art in this case. *See* Doc. No. 133 (arguing that KCI can still challenge the patents on the basis of its new prior art).

"credible invalidity defense [precluded] a finding of objective recklessness *despite* the Federal Circuit's ultimate rejection of that defense." *Id.* at 366 (emphasis added). Thus, *Solvay* stands for the proposition that a subsequent adverse decision at the Federal Circuit does not bar an accused infringer from obtaining summary judgment of no willful infringement based upon its reliance on an ultimately overturned district court order. Under this logic, which the Court finds persuasive, inasmuch as litigants should be permitted to rely on the legal findings of the district courts without accruing enhanced damages, KCI was entitled to rely on Judge Furgeson's order even if it was later overturned.

The Court in *Solvay* went so far as to say that "the Federal Circuit's ultimate decision to reject [the accused infringer's] defense following an exhaustive analysis is irrelevant to the willfulness inquiry." *Id.* This Court does not find *Bluesky II* to be "irrelevant," but the dispositive weight WFU seeks to accord it in the objective analysis is misguided. Although the Court agrees with WFU that no injunction was required to consider KCI's post-filing conduct, the Court is also mindful of the Federal Circuit's instruction that "[w]illful infringement in the main must find its basis in pre-litigation conduct." *Seagate*, 497 F.3d at 1374. Here, KCI's pre-litigation conduct was objectively reasonable because it relied on Judge Furgeson's JMOL order invalidating the patents and opinion of counsel. The subsequent *Bluesky II* decision by the Federal Circuit, while relevant to the analysis, is insufficient alone for WFU to meet its heavy burden of showing by clear and convincing evidence that KCI acted with objective recklessness. Accordingly, KCI is entitled to summary judgment on WFU's claim of willful infringement.

**CONCLUSION**

In light of the foregoing analysis, WFU's motion for partial summary judgment on the basis of judicial estoppel is DENIED.  Doc. No. 133.  KCI's motion for summary judgment of no willful infringement is GRANTED.  Doc. No. 152.

SIGNED this 22nd day of April, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE